UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE MARK A. BARNETT, JUDGE

| | |
|---|---|
| SEAH STEEL VINA CORPORATION, <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> *and* <br><br> BULL MOOSE TUBE COMPANY; MARUICHI AMERICAN CORPORATION; WHEATLAND TUBE COMPANY; THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; NUCOR TUBULAR PRODUCTS INC., <br><br> *Defendant-Intervenors* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Court No. 23-257 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

COMMENTS OF SEAH STEEL VINA CORPORATION
ON FINAL REDETERMINATION ON REMAND

WINTON & CHAPMAN PLLC
1100 13th Street, N.W., Suite 825
Washington, D.C. 20005
(202) 774-5500

Attorneys for SeAH Steel VINA Corporation

June 26, 2026

Table of Contents

Page

INTRODUCTION ................................................................................................ 2

ARGUMENT ..................................................................................................... 3

    A.    Commerce's Recharacterization of Its Section 1677j(b)(3) Analysis
        Does Not Satisfy Section 1677j(b)(1)(E) ............................................. 3

    B.    Commerce's Section 1677j(b)(3) Reconsideration Does Not Comply
        with the Court's Remand Instructions ................................................. 5

        1.    Commerce Failed to Adequately Explain Its Selection of
                Comparison Periods ................................................................ 5

        2.    Commerce Ignored the Within-Period Annual Data that
                Contradicts a Circumvention Theory .................................... 7

        3.    Commerce's Section 1677j(b)(3)(C) Analysis Does Not Support
                an Affirmative Finding ........................................................... 8

        4.    The Aggregate Five-Year Comparison Cannot Bear the Weight
                Commerce Places on It ........................................................... 10

    C.    Commerce's Treatment of the Affiliation Factor Cannot Compensate
        for the Failures in Its Other Analyses ................................................. 11

CONCLUSION .................................................................................................. 11

Table of Authorities

Page

CASES

*Al Ghurair Iron & Steel LLC v. United States*,
    65 F.4th 1351 (Fed. Cir. 2023) ...................................................................... 6

*Diamond Sawblades Mfrs. Coal. v. United States*,
    299 F.Supp.3d 1374 (Ct. Int'l Trade 2018) ................................................... 6

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ..................................................................................... 6, 7

STATUTES

19 U.S.C. § 1677j(b)(1) ............................................................................... *passim*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE MARK A. BARNETT, JUDGE

| | |
|---|---|
| SEAH STEEL VINA CORPORATION, | ) |
| *Plaintiff,* | ) |
| v. | ) |
| UNITED STATES, | ) |
| *Defendant,* | ) |
| *and* | ) Court No. 23-257 |
| BULL MOOSE TUBE COMPANY; MARUICHI AMERICAN CORPORATION; WHEATLAND TUBE COMPANY; THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; NUCOR TUBULAR PRODUCTS INC., | ) |
| *Defendant-Intervenors* | ) |

COMMENTS OF SEAH STEEL VINA CORPORATION
ON FINAL REDETERMINATION ON REMAND

These comments are submitted on behalf of SeAH Steel VINA Corporation ("SeAH VINA") to comment on the final redetermination by the U.S. Department of Commerce ("Commerce") dated April 30, 2026, ECF No. 78, addressing the December 16, 2025, decision by this Court in *SeAH Steel VINA Corporation v. United States,* Court No. 23-00257, Slip Op. 25-157 (CIT December 16, 2025) ("Remand Order"), concerning Commerce's final determination in the circumvention inquiry of the antidumping order on Certain Welded Carbon Steel Standard Pipes and Tubes ("pipe and tube") from India.[1]

---

[1] The Department's April 30 redetermination is hereinafter referred to as the "Redetermination."

INTRODUCTION

Commerce's Redetermination does not comply with the Court's Remand Order. The Court remanded Commerce's affirmative circumvention determination because Commerce "failed to explain how factors that are 'mixed' enabled the agency to reach a conclusion that action was appropriate" under section 781(b)(1)(E) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677j(b)(1)(E).[2] The Court instructed Commerce to "reconsider or further explain its basis for the affirmative circumvention finding," and specified that, if Commerce had relied upon "other" factors distinct from those in section 1677j(b)(1)(A)-(D), it must identify those factors and the substantial evidence supporting them. Alternatively, to the extent Commerce reconsidered its section 1677j(b)(3) analysis, the Court instructed Commerce to explain the basis for the time periods used, reconciling the statutory requirements with the 2012-2016 versus 2017-2021 comparison periods and explaining changes within the 2017-2021 inquiry period.[3]

The Redetermination does not identify "other factors" under section 1677j(b)(1)(E) that are genuinely distinct from the criteria already required under subsections (A) through (D). Although Commerce reopened the record, it failed to find new evidence of such factors, relying instead on a mere recharacterization of the existing pattern-of-trade and affiliation data. This approach ignores the Court's finding that subsection (E) must have a unique operative effect, as evidenced by its deliberate inclusion in third-country circumvention cases but exclusion from domestic completion cases.[4] Ultimately,

---

[2] *See* Remand Order, at 27.

[3] *See id.* at 27-28, n.21.

[4] *See id.* at 22, 27-28.

Commerce still has not identified the "other factors" it previously claimed were necessary to support its affirmative determination.

To the extent that Commerce purported to reconsider its (b)(3) analysis, it did not comply with the Court's specific instruction to explain the basis for the time periods that it used and failed to reconcile its affirmative decision with the changes that directly contradict the evasion narrative within the inquiry period during 2017-2021.  Moreover, Commerce's section 1677j(b)(3)(C) analysis does not support an affirmative finding when viewed in proper context:  while India-origin hot-rolled steel ("HRS") exports to Vietnam increased 580.3 percent, India-origin HRS exports to the rest of the world also increased by 113.9 percent during the same period, and direct U.S. imports of pipe and tube from India nearly doubled, reflecting India's broad global export expansion rather than targeted circumvention.[5]

<u>ARGUMENT</u>

A.  *Commerce's Recharacterization of Its Section 1677j(b)(3) Analysis Does Not Satisfy Section 1677j(b)(1)(E)*

The Court found that section 1677j(b)(1)(E) "must be construed to have some operative effect" beyond the factors already required under section 1677j(b)(1)(A)-(D).[6] The Court grounded this conclusion in the statutory structure:  section 1677j(b)(1)(E) appears in the third-country completion circumvention provision but is absent from the parallel domestic completion circumvention provision in section 1677j(a)(1), which otherwise lists the same factors (A) through (D).  Congress's deliberate addition of factor

---

[5] *See* Redetermination at 9.

[6] *See* Remand Order, at 27.

(E) only to the third-country provision signals that it was intended to require something more than satisfying the mandatory (A)-(D) criteria.[7]

Rather than identifying any "other" factors distinct from those in section 1677j(b)(1)(A)-(D), Commerce forewent that path altogether and instead recharacterized its section 1677j(b)(3) analysis as sufficient to support its affirmative finding under section 1677j(b)(1)(E). This approach fails for two reasons.

First, the Court already found that Commerce's reliance on section 1677j(b)(3) factors that were "mixed and inconclusive" was insufficient to support an affirmative finding under section 1677j(b)(1)(E).[8] Commerce's Redetermination does not cure this deficiency. It simply reweighs the same section 1677j(b)(3) factors without identifying any basis for the section 1677j(b)(1)(E) finding that is distinct from what the Court already found insufficient.

Second, Commerce identified no new evidence to support a finding under section 1677j(b)(1)(E). In this regard, Commerce reopened the record on remand specifically to gather information to support a finding that "action is appropriate under section 781(b)(1)(E) of the Act… apart from those under section 781(b)(1)(A)-(D)."[9] Commerce, however, received no new information when it reopened the record.[10] Instead, Commerce of its own accord placed on the record *post-inquiry-period* data, including 2025 U.S. International Trade Commission ("USITC") import statistics and U.S. Customs and Border

---

[7] *See id.* at 22, 27.

[8] *See id.* at 27.

[9] Redetermination at 5-6.

[10] *See id.*

Protection ("CBP") entry data, to which both SeAH VINA and the domestic interested parties submitted rebuttal information.[11]  Commerce relied on that post-inquiry data in the draft remand redetermination.  But, after SeAH VINA objected, agreed in the final redetermination that such data was outside the inquiry period and removed it.[12]

The final redetermination is, therefore, left with nothing beyond a reweighing of the same section 1677j(b)(3) factors that were before Commerce in the original determination and found lacking by this Court.  A more detailed version of the same analysis the Court found deficient remains deficient.

### B.    Commerce's Section 1677j(b)(3) Reconsideration Does Not Comply with the Court's Remand Instructions

#### 1.    Commerce Failed to Adequately Explain Its Selection of Comparison Periods

The Court's remand order instructed Commerce to "explain the basis for the time periods that it used" and to reconcile its period selection with the statutory requirements of section 1677j(b)(3)(C), which requires consideration of whether imports of HRS from India into Vietnam increased "after the initiation of the investigation which resulted in the issuance of" the antidumping order on pipe and tube from India.[13]  The Court noted that Commerce had acknowledged that the antidumping order on pipe and tube from India "dates back to 1986" but had not reconciled this with its choice to compare the 2012-2016 period against the 2017-2021 period.[14]

---

[11] *See id.*

[12] *See id.* at 15.

[13] *See* Remand Order at 27-28, n.21.

[14] *See id.*

Commerce's explanation on remand is essentially that going back to the 1980s is impractical.[15]  Commerce's practicality argument does not answer the question the Court actually raised.  The Court did not instruct Commerce to use periods anchored to 1986.  It instructed Commerce to explain the basis for its period selection and to reconcile that basis with the statutory language.  Commerce has not done so.

Specifically, Commerce has not explained why 2012 rather than any other year is the appropriate starting point for the base period, or why 2016 is the appropriate cutoff for the base period.  By failing to tether its choice to an objective, identifiable principle, Commerce essentially asserts that it may choose any base period it desires, at any time, without constraint.  Such an approach does not satisfy the requirement that an agency "articulate a satisfactory explanation for its action," including a "rational connection between the facts found and the choice made."[16]  Indeed, the U.S. Court of Appeals for the Federal Circuit upheld Commerce's period selection in *Al Ghurair Iron & Steel LLC v. United States*, specifically because Commerce provided a reasoned explanation that allowed the court to evaluate its logic.  There, Commerce explained that the chosen period allowed it to analyze whether trade patterns changed in reaction to the antidumping and countervailing duty investigations, identified when parties learned they could potentially face additional duties, and demonstrated consistency with prior determinations.[17]

---

[15] *See* Redetermination at 10-11.

[16] *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Diamond Sawblades Mfrs. Coal. v. United States*, 299 F.Supp.3d 1374, 1382 (Ct. Int'l Trade 2018).

[17] *Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351, 1358-59 (Fed. Cir. 2023).

Here, Commerce offers no comparable principled explanation for why 2012 is the appropriate baseline starting point, or why 2016 is the appropriate cutoff for the base period. Without such an explanation, the Court cannot determine whether Commerce's chosen periods accurately capture the relevant trade patterns or simply produce a favorable comparison. The Court's remand instruction on this point remains unsatisfied.[18]

### 2. Commerce Ignored the Within-Period Annual Data that Contradicts a Circumvention Theory

The Court's remand order instructed Commerce, to the extent it reconsidered its section 1677j(b)(3) analysis, to "explain the basis for the time periods that it used" and to reconcile the statutory requirements "with its consideration of the 2012-2016 versus 2017-2021 periods, *as well as changes within the latter period, i.e., 2017-2021*."[19] Commerce's final remand redetermination does not comply with this instruction. Commerce continues to anchor its section 1677j(b)(3)(A) finding on a countrywide basis almost entirely on the aggregate comparison of two five-year periods: U.S. imports of pipe and tube from Vietnam increased 8.2 percent from the 2012-2016 period to the 2017-2021 period, and Vietnam's share of total U.S. pipe and tube imports rose from 7.9 percent to 8.8 percent.[20]

Commerce does not meaningfully engage with what happened with U.S. imports of pipe and tube from Vietnam during the inquiry period, which saw an annual decline from

---

[18] *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 ("The reviewing court should not attempt itself to make up for such deficiencies: we may not supply a reasoned basis for the agency's action that the agency itself has not given.").

[19] *See* Remand Order at 27-28, n.21 (emphasis added).

[20] *See* Redetermination at 7.

2017 to 2021.[21]  A circumvention scheme premised on diverting India-origin HRS to Vietnam for processing and re-export to the United States does not produce consistently declining export volumes during the very years in which the alleged evasion is occurring. Commerce offers no coherent economic explanation for this pattern.  Instead, it relies on aggregate five-year averages while ignoring a within-period trend that directly undermines its theory.

### 3.    Commerce's Section 1677j(b)(3)(C) Analysis Does Not Support an Affirmative Finding

The Remand Order specifically highlighted section 1677j(b)(3)(C), which requires consideration of whether imports of HRS from the subject country into Vietnam increased after the initiation of the investigation resulting in the antidumping order on pipe and tube from India, as part of the time-period reconciliation Commerce was instructed to perform.[22]  The Court further noted that Commerce had acknowledged in its preliminary decision memorandum that the Order "dates back to 1986," but had not reconciled this with its choice to compare 2012-2016 against 2017-2021.[23]

Commerce found that India-origin HRS exports to Vietnam increased by 580.3 percent from the 2012-2016 period to the 2017-2021 period.[24]  While this figure appears

---

[21] *See* Certain Circular Welded Carbon Steel Standard Pipes and Tubes from India: Preliminary Decision Memorandum for the Circumvention Inquiry on the Antidumping Duty Order ("India Prelim"), April 6, 2023, at 19 (Public Record ("PR") 145).  Imports of pipe and tube from Vietnam into the United States from 2017 to 2021 in quantity of metric ton were:  89,240 (2017); 67,581 (2018); 59,763 (2019); 44,847 (2020); 43,556 (2021). *See id.*

[22] *See* Remand Order at 27-28, n.21.

[23] *See id.*

[24] *See* Redetermination at 9.

significant in isolation, it does not support a circumvention finding when viewed in context. During the same period, India-origin HRS exports to the rest of the world (excluding Vietnam) increased by 113.9 percent.[25] India was a massively and rapidly expanding global steel exporter during this period. The increase in Vietnam-bound HRS must be understood against this backdrop of India's broad global export expansion, not treated as evidence of targeted circumvention.

Additionally, direct U.S. imports of pipe and tube from India nearly doubled, increasing by 96.2 percent, from the 2012-2016 base period to the 2017-2021 inquiry period.[26] The classic indicator of country-wide circumvention through a third country is a decrease in U.S. imports from the subject country as production migrates to the third country for re-export. The record shows the opposite: Indian producers were not diverting production to Vietnam while simultaneously nearly doubling their direct exports to the United States. Commerce has not explained how these trends, which affirmatively contradict the hallmarks of circumvention, are consistent with an affirmative circumvention finding.

Commerce's Redetermination relies on the absolute magnitude of the 580.3 percent increase in India-origin HRS to Vietnam to overcome the contextual evidence pointing against circumvention. Where the subject country's global HRS exports grew at a similar trajectory, and where the subject country simultaneously nearly doubled its own direct exports of the finished goods to the U.S. market, the 580.3 percent figure does not

---

[25] See id.

[26] See India Prelim at. 19.

constitute the kind of targeted, evasion-driven increase that supports an affirmative circumvention finding.

### 4. The Aggregate Five-Year Comparison Cannot Bear the Weight Commerce Places on It

Even setting aside the within-period data, the aggregate metrics Commerce relies upon are thin. An 8.2 percent increase in U.S. import volumes of pipe and tube from Vietnam and a 0.9 percentage point increase in Vietnam's share of U.S. imports of pipe and tube from the world, comparing five-year averages, do not constitute the kind of significant, targeted increase in trade flows that characterizes circumvention. These figures are consistent with Vietnam's general growth as a pipe and tube exporter over time, driven by factors entirely unrelated to the antidumping order on pipe and tube from India. Commerce does not analyze or rule out these alternative explanations.

SeAH VINA's own export data cuts against Commerce's theory: its pipe and tube exports to the United States produced from India-origin HRS fell steeply during the very inquiry period in which Commerce claims circumvention was occurring.[27] A company allegedly exploiting Indian HRS to evade antidumping duties does not simultaneously reduce its exports of the product it is supposedly diverting. Commerce offers no explanation for how declining company-level export figures, viewed alongside declining aggregate Vietnamese import volumes, support a finding of systematic evasion.

---

[27] *See* SeAH VINA's October 7, 2022, Initial Questionnaire Response ("Initial Response") at Appendix 10 (PR-65, Confidential Record ("CR") 14).

C.    *Commerce's Treatment of the Affiliation Factor Cannot*
      *Compensate for the Failures in Its Other Analyses*

Commerce correctly found that SeAH VINA is not affiliated with any Indian HRS producer or supplier.[28]  The absence of affiliation undercuts the evasion theory, as affiliated companies are far more likely to coordinate the kind of deliberate input diversion that circumvention requires.

Even assuming that the lack of affiliation between SeAH VINA and a Indian HRS producer or supplier should serve as a "neutral" factor as Commerce characterizes it, the Redetermination still cannot stand.  A neutral affiliation finding under section 1677j(b)(3)(B) can only be treated as consistent with an affirmative determination if the remaining section 1677j(b)(3) factors provide substantial affirmative support.  Here, they do not.  The section 1677j(b)(3)(C) analysis does not support an affirmative finding when India's 580.3 percent increase in HRS exports to Vietnam is understood in the context of India's 113.9 percent global HRS export growth and nearly doubled direct U.S. imports of pipe and tube from India.  In addition, Commerce's section 1677j(b)(3)(A) finding is grounded in aggregate metrics that are contradicted by the annual data during the inquiry period.  A neutral factor cannot compensate for the failure of the remaining analytical pillars Commerce relies upon.

CONCLUSION

Commerce's Redetermination fails to comply with the specific requirements the Court set out in its Remand Order.  Rather than identifying any "other factors" distinct from those in section 1677j(b)(1)(A)-(D), Commerce forewent that path entirely and

---

[28] *See* Redetermination at 8-9.

recharacterized its section 1677j(b)(3) analysis as sufficient to support its affirmative finding, without identifying any basis for the section 1677j(b)(1)(E) finding that is distinct from what the Court already found insufficient.  Its section 1677j(b)(3)(C) analysis, when viewed in the context of India's broad global HRS export expansion and nearly doubled direct U.S. imports of pipe and tube from India, does not support a circumvention finding. And its section 1677j(b)(3)(A) analysis continues to rely on aggregate five-year averages while ignoring the within-period annual data, showing declining U.S. imports of pipe from tube from Vietnam throughout 2017-2021.

For the foregoing reasons, we respectfully request that the Court remand this matter to Commerce once more for disposition in a manner consistent with the judgment of this Court.

Respectfully submitted,

/s/ Jeffrey M. Winton
Jeffrey M. Winton
Amrietha Nellan
Vi N. Mai
Rachel Hauser

WINTON AND CHAPMAN PLLC
1100 13th Street, N.W., Suite 825
Washington, D.C. 20005
(202) 774-5500

Attorneys for SeAH Steel VINA Corporation

June 26, 2026

- 12 -

<u>Certificate of Compliance</u>

Pursuant to the Court's "Standard Chambers Procedures," I, Jeffrey M. Winton, hereby certify that the word count function of the word-processing system used to prepare the foregoing brief indicates that the brief contains 2,687 words including headings, footnotes, and quotations, but not including the cover, caption, table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature block.

                                        /s/Jeffrey M. Winton


June 26, 2026