**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE MARK A. BARNETT, JUDGE**

SEAH STEEL VINA CORPORATION,

*Plaintiff,*

*v.*

UNITED STATES,

*Defendant,*

*and*

BULL MOOSE TUBE COMPANY; MARUICHI AMERICAN CORPORATION; WHEATLAND TUBE COMPANY; THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; NUCOR TUBULAR PRODUCTS INC.,

*Defendant-Intervenors.*

Court No. 23-257

**PUBLIC DOCUMENT**

**DEFENDANT-INTERVENORS' COMMENTS**
**IN SUPPORT OF FINAL REDETERMINATION ON REMAND**

Roger B. Schagrin
Jeffrey D. Gerrish
Nicholas C. Phillips
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
*Counsel to Bull Moose Tube Company; Maruichi American Corporation; Wheatland Tube Company; The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Theodore P. Brackemyre, Esq.
Kimberly A. Reynolds, Esq.
Paul A. Devamithran, Esq.
**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
*Counsel to Nucor Tubular Products Inc.*

August 10, 2026

# TABLE OF CONTENTS

I. FACTUAL BACKGROUND .......... 1

II. ARGUMENT .......... 6

A. Commerce Complied with the Remand Order by Identifying "Other" Factors that Supported its Affirmative Circumvention Determination .......... 6

B. Commerce Complied with the Remand Order by Explaining its Choice of Time Periods 8

C. SeAH VINA's Remaining Arguments Are Unpersuasive..........10

III. CONCLUSION .......... 12

## TABLE OF AUTHORITIES

**Cases**

*ABB, Inc. v. United States*, 273 F. Supp. 3d 1186 (Ct. Int'l Trade 2017), *aff'd*, 920 F.3d 811 (Fed. Cir. 2019) .......... 7

*Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351 (Fed. Cir. 2023) .......... 8, 9, 11

*Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) .......... 9, 11

*Deacero S.A.P.I. de C.V. v. United States*, 2026 WL 1670099 (Ct. Int'l Trade 2026) .......... 9, 11

*NTN Bearing Corp. of America v. United States*, 132 F. Supp. 2d 1102 (Ct. Int'l Trade 2001), *aff'd*, 295 F.3d 1263 (Fed. Cir. 2002) .......... 7

*SeAH Steel VINA Corporation v. United States*, Court No. 23-00256, Slip Op. 25-157 (Court of Int'l Trade Dec. 16, 2025) .......... *passim*

*Timken Co. v. United States*, 968 F. Supp. 3d 1279 (Ct. Int'l Trade 2014), *aff'd*, 589 F. App'x 995 (Fed. Cir. 2015) .......... 8

**Statutes**

19 U.S.C. §1677j(b)(1) .......... *passim*

19 U.S.C. §1677j(b)(3) .......... *passim*

**Administrative Determinations**

*Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 77,270 (Dep't Commerce Nov. 9, 2023) .......... 1

*Circular Welded Carbon Steel Standard Pipes and Tubes From India,: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*; 88 Fed. Reg. 77,279 (Dep't Commerce Nov. 9, 2023) .......... 1

*Circular Welded Carbon Quality Steel Pipe From the People's Republic of China,: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*; 88 Fed. Reg. 77,287 (Dep't Commerce Nov. 9, 2023) .......... 2

On behalf of Defendant-Intervenors Bull Moose Tube Company, Maruichi American Corporation, Wheatland Tube Company, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, and Nucor Tubular Products Inc. ("Defendant-Intervenors"), we hereby submit comments in support of the final redetermination on remand issued by the U.S. Department of Commerce ("Commerce") pursuant to this Court's decision in *SeAH Steel VINA Corporation v. United States*, Court No. 23-00257, Slip Op. 25-157 (Court of Int'l Trade Dec. 16, 2025) ("Remand Order"). In the Remand Order, this Court instructed Commerce to reconsider its final determination reached in *Circular Welded Carbon Steel Standard Pipes and Tubes From India: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 77,279 (Dep't Commerce Nov. 9, 2023) ("India Original Final Determination") and the accompanying Issues and Decision Memorandum ("IDM"). On remand, Commerce reconsidered its affirmative determination of circumvention and continued to find that an affirmative determination was appropriate to prevent evasion of the antidumping duty order on India (the "*Order*") . *See* Final Results of Redetermination Pursuant to Court Remand, *Circular Welded Carbon Steel Standard Pipes and Tubes from India* (May 1, 2026) ("India Remand Redetermination"). For the reasons described below, the India Remand Redetermination complies with the Court's Remand Order and is supported by substantial evidence. This Court should therefore affirm Commerce's India Remand Redetermination.

## I. FACTUAL BACKGROUND

This Court's Remand Order directed Commerce to reconsider its circumvention finding in the India Original Final Determination as well as its findings in two other parallel circumvention inquiries: *Certain Circular Welded Non-Alloy Steel Pipe From the Republic of*

*Korea*, 88 Fed. Reg. 77,270 (Dep't Commerce Nov. 9, 2023) ("Korea Original Final Determination") and *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China*, 88 Fed. Reg. 77,287 (Dep't Commerce Nov. 9, 2023) ("China Original Final Determination"). The circumvention proceedings for India, Korea, and China concerned hot-rolled steel ("HRS") from these three countries that had been exported to Vietnam to be finished into circular welded steel pipe ("CWP") that was then exported to the United States.

In conducting circumvention inquiries involving merchandise completed or assembled in third countries under 19 U.S.C. §1677j(b), the statute provides that merchandise must satisfy four factors identified at §1677j(b)(1)(A)-(D) before Commerce may include such merchandise within the scope of an antidumping or countervailing duty order. In addition, pursuant to §1677j(b)(3)(1)(E), Commerce must determine that "action is appropriate under this paragraph to prevent evasion of such order or finding."

As part of the inquiry into whether action is appropriate under §1677j(b)(3)(1)(E), the statute provides for Commerce to "take into account" certain factors. Specifically, for the circumvention inquiries on CWP from India, Korea, and China, this provision required Commerce to take into account "the pattern of trade, including sourcing patterns," whether there was evidence of affiliation between HRS suppliers in India, Korea, and China and CWP producers in Vietnam, and "whether imports into {Vietnam} of {HRS} have increased after initiation of the investigation which resulted in the issuance of {the antidumping order}." 19 U.S.C. §1677j(b)(3)(A), (B), (C). In its original circumvention determinations, Commerce concluded that the so-called (b)(3) factors were "mixed and inconclusive" for all countries but "did not detract from a finding that an action is appropriate" pursuant to §1677j(b)(3)(1)(E). IDM at 35.

In its Remand Order, the Court found that "{t}he assertion that the (b)(3) factors did not detract from a finding that an action is appropriate assumes that action was found to be appropriate on some other grounds. However, Commerce did not identify any other grounds beyond the factors that it was already required to find pursuant to section 1677j(b)(1)(A)-(D)." Remand Order at 27. Because §1677j(b)(3)(1)(E) must have operative effect, the Court instructed Commerce to further explain its affirmative determination by identifying what factors other than the §1677j (b)(1)(A)-(D) factors supported its determination that action is appropriate pursuant to §1677j (b)(1)(E). Remand Order at 27-28.

In the India Remand Redetermination, Commerce explained that it reconsidered the (b)(3) factors and found that "patterns of trade show that U.S. imports of certain welded carbon steel standard pipes and tubes from…Vietnam have increased, and that imports of India-origin hot-rolled steel (HRS) into Vietnam have also increased. Accordingly…we find that action is appropriate to prevent evasion of the *Order* pursuant to section 781(b)(1)(E) of the Act{.}" India Remand Redetermination at 2. Indeed, between the comparison period (2012-2016) and the inquiry period (2017-2021), the record shows that the following occurred:

- The quantity of Indian exports of HRS to Vietnam increased by 580.3 percent from 1,217,189 metric tons ("MT") to 8,280,222 MT, while the quantity of its exports of HRS to the rest of the world increased by only 113.9 percent;
- Vietnamese exports of CWP to the United States increased by 8.2 percent;
- The share of U.S. imports of CWP from Vietnam in relation to the share of U.S. imports of CWP from all countries increased from 7.9 percent to 8.8 percent.

*See* India Remand Redetermination at 7 and 9 (citing Commerce's preliminary determination of circumvention).

Commerce determined that this evidence satisfied §1677j (b)(3)(A), concerning the pattern of trade, because:

> (1) aggregate import data show a significant increase in the quantity of U.S. imports of pipe and tube from Vietnam from the 2012-2016 period to the 2017-2021 period; and 2) aggregate import data show a significant increase in the share of U.S. imports of pipe and tube from Vietnam in relation to the overall U.S. imports of pipe and tube from the world from the 2012-2016 period to the 2017-2021 period. These significant increases, along with the substantial increase in the quantity of Indian-origin HRS imported into Vietnam, as well as by SeAH VINA itself…indicate that India-origin HRS is likely to have been made into pipe and tube not in India but in Vietnam and then exported to the United States to evade the Order.

India Remand Redetermination at 7. Concerning evidence of affiliation between HRS suppliers in India and CWP producers in Vietnam pursuant to §1677j (b)(3)(B), Commerce found no such evidence on the record but found that "the lack of affiliation does not weigh against a finding that a determination of circumvention is appropriate if other factors pursuant to section 781(b)(3) of the Act demonstrate otherwise," citing to previous affirmative circumvention determinations in which no evidence of affiliation was found. India Remand Redetermination at 8.

Concerning whether imports of HRS into Vietnam increased following imposition of the *Order* pursuant to §1677j (b)(3)(C), the record showed that between the comparison period and the inquiry period, Indian HRS exports to Vietnam grew by 580.3 percent, from 1,217,189 MT to 8,280,222 MT, while Indian HRS exports to the rest of the world, excluding Vietnam, increased by only 113.9 percent. India Remand Redetermination at 9. Furthermore, the share of Indian HRS exports to Vietnam in relation to total exports of Indian HRS to all countries increased from 13.44 percent in the comparison period to 33.05 percent for the inquiry period. *Id.* Finally, SeAH VINA's data showed that the total quantity and the share of HRS imported from India increased substantially from 2017 to 2021. *Id.* Commerce determined that this satisfied §1677j (b)(3)(C) because:

> {A}ggregate data show a great 580.3 percent increase in exports of India-origin HRS to Vietnam from the 2012-2016 period to the 2017-2021 period, and SeAH VINA's data show a substantial increase in imports of Indian-origin HRS during

> the inquiry period. The increased movement of HRS from India to Vietnam during these time periods indicate that evasions of the *Order* likely have taken place and thus supports the continued affirmative determination of circumvention.

India Remand Redetermination at 9-10.

Accordingly, Commerce found that both the pattern of trade under §1677j (b)(3)(A) and the increase in imports of HRS from India into Vietnam under §1677j (b)(3)(C) supported the continued affirmative determination of circumvention. *Id.* at 7, 10.

In its Remand Order, the Court also instructed Commerce that "to the extent that Commerce reconsiders its analysis of the (b)(3) factors, it should explain the basis for the time periods that it used." Remand Order at 28 n. 21. In particular, the Court noted that §1677j (b)(3)(C) requires consideration of whether imports of HRS into Vietnam have increased after initiation of the investigation that resulted in the issuance of the *Order*, which dates back to 1986. *Id.* The Court found that "Commerce has not reconciled these statements and the statutory requirements with its consideration of the 2012-2016 versus 2017-2021 periods, as well as changes within the latter period, i.e. 2017-2021, for each of the three countries." *Id.*

In the India Remand Redetermination, Commerce explained its choice of time periods used in evaluating the (b)(3) factors. *See* India Remand Redetermination at 10. Commerce noted that §1677j (b)(3)(C) requires consideration of whether imports of HRS into Vietnam "have increased *after the initiation of the investigation which resulted in the issuance of such order or finding*" and explained that it has been its practice, which has been upheld by the courts, to interpret this provision as providing Commerce with discretion to select the comparison period "at any time after the initiation of the investigation." *Id.* (emphasis in original). Commerce found that a restrictive interpretation of this statutory provision – *i.e.*, one that would require a comparison of import data prior to 1986, when the *Order* was issued, and import data for the

period after 1986 – was impracticable. *Id.* at 11. Commerce identified two reasons for this. First, foreign companies can commence circumvention at any time after the initiation of an investigation and therefore domestic interested parties should be able to propose comparison periods that capture when they believe circumvention began. *Id.* Second, for longstanding orders, such as the *Order* at issue here, aligning the comparison period with the period prior to initiation of the investigation that gave rise to the order would require data going back to the 1980s, and "companies subject to the circumvention inquiry are not required to maintain such data{.}" *Id.*

## II. ARGUMENT

### A. Commerce Complied with the Remand Order by Identifying "Other" Factors that Supported its Affirmative Circumvention Determination

The operative instruction in the Remand Order was that "{t}o the extent that Commerce has in fact relied upon 'other' factors that are distinct from factors (b)(1)(A)-(D) to support its determination that action is appropriate pursuant to subsection (b)(1)(E), Commerce must identify what these 'other' factors are and identify the substantial evidence that supports its finding." Remand Order at 27-28. In the India Remand Redetermination, Commerce has plainly done so and supported its identification of these distinct factors with substantial evidence. First, Commerce found that the pattern of trade under §1677j (b)(3)(A) supported a circumvention determination because Indian exports of HRS to Vietnam exploded by 580.3 percent while Vietnamese exports of CWP to the United States increased by 8.2 percent between the comparison period and the inquiry period. India Remand Redetermination at 7. Furthermore, Commerce found that the analysis of HRS imports into Vietnam under §1677j (b)(3)(C) also supported an affirmative determination because Indian exports of HRS to Vietnam grew dramatically, both in absolute terms and as a share of Indian exports of HRS to the world, and

because SeAH VINA's own imports of Indian HRS increased. India Remand Redetermination at 9-10.

SeAH VINA's arguments to the contrary are unavailing. SeAH VINA claims that the India Remand Redetermination does not actually identify "'other factors'… that are genuinely distinct from the criteria already required under subsections (A) through (D)," which purportedly "ignores the Court's finding that subsection (E) must have a unique operative effect{.}" Comments of SeAH Steel VINA Corporation on Final Redetermination on Remand, Ct. No. 23-257 (June 26, 2026), ECF No. 80 ("SeAH VINA Comments") at 2. SeAH VINA claims that Commerce merely "recharacterized its 16777j(b)(3) analysis" and "simply reweighs the same section 1677j(b)(3) factors{.}" *Id.* at 4. Furthermore, according to SeAH VINA, Commerce "identified no new evidence to support a finding under section 1677j(b)(1)(E)." *Id.*

These arguments lack merit. Although it is axiomatic that *courts* may not reweigh the evidence considered by Commerce, that is because weighing the evidence is *Commerce's* job. This Court remanded Commerce's determination "for *reconsideration or further explanation* consistent with this opinion." Remand Order at 28 (emphasis added). The Remand Order therefore directly contemplated that Commerce may "recharacterize" or "reweigh" the evidence and its decision. Reconsidering the existing record evidence on remand and providing a more fulsome explanation of that evidence to support Commerce's decision is in fact a paradigmatic exercise of agency discretion. *See ABB, Inc. v. United States*, 273 F. Supp. 3d 1186, 1199 n.14 (Ct. Int'l Trade 2017), *aff'd*, 920 F.3d 811 (Fed. Cir. 2019) ("Unless specifically directed by the court, Commerce has broad discretion to fully consider the issues remanded."). Further, whether Commerce re-opens the record to consider new evidence, or merely reconsiders the existing record, is also a matter within the agency's discretion. *See NTN Bearing Corp. of America*, 132

F. Supp. 2d 1102 (Ct. Int'l Trade 2001), *aff'd*, 295 F.3d 1263 (Fed. Cir. 2002) ("Any decision to expand the administrative record upon remand is well within {Commerce's} discretion, absent express language from the Court barring such action.").

Of course, when reconsidering the record evidence, Commerce did not "ignore{} the Court's finding that subsection (E) must have a unique operative effect." SeAH VINA Comments at 2. The factors that Commerce identified to support its decision on remand – the pattern of trade evidence and the HRS import evidence – are not part of any statutory inquiry identified by §1677j(b)(1)(A)-(D). They are located in a separate part of the statute, at §1677j(b)(3). They therefore satisfy the Court's request for "factors that are distinct from factors (b)(1)(A)-(D)" and support Commerce's finding that an affirmative circumvention determination is appropriate under §1677j(b)(1)(E), granting that provision operative effect.

### B. Commerce Complied with the Remand Order by Explaining Its Choice of Time Periods

SeAH VINA claims that Commerce failed to follow the Court's instruction to explain the basis for the time periods it used and reconcile them with the language of §1677j(b)(3)(C), which requires consideration of whether imports of HRS from India into Vietnam increased "after the initiation of the investigation" that led to the *Order*. SeAH VINA Comments at 5. SeAH VINA argues that although Commerce discussed the impracticality of comparing data from before and after an order that was issued in 1986, it did not provide a "principled explanation for why 2012 is the appropriate baseline starting point, or why 2016 is the appropriate cutoff for the base period." *Id.* at 7.

However, as an initial matter, "the statute does not identify any particular time period at all for Commerce to consider" in circumvention inquiries. *Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351, 1358-59 (Fed. Cir. 2023) (internal quotation removed). Further,

"{b}ased on the absence of a designated methodology, Commerce has the discretion to decide on its own method of analysis." *Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357, 1368 (Ct. Int'l Trade 2021), *aff'd*, 65 F.4th 1351 (Fed. Cir. 2023) (citing *Timken Co. v. United States*, 968 F. Supp. 3d 1279, 1286 n.7 (Ct. Int'l Trade 2014), *aff'd*, 589 F. App'x 995 (Fed. Cir. 2015)). Here, Commerce simply selected a comparison period of equal length and immediately preceding the inquiry period of 2017-2021, which is the period in which the domestic interested parties alleged circumvention took place. Commerce's selection of an equal-length comparison period is a well-established practice that has been repeatedly upheld by the courts. *See, e.g.*, *Deacero S.A.P.I. de C.V. v. United States*, 2026 WL 1670099 at *18 (Ct. Int'l Trade 2026) ("Commerce acted reasonably by choosing its inquiry period based on when petitioners alleged circumvention to have begun and by selecting a comparison period of equal length."); *Al Ghurair I*, 536 F. Supp. 3d at 1379 (upholding Commerce's practice of "compar{ing} trade data using periods of time identical in length and bifurcated by the initiation of the CORE investigations.")

It is true that, unlike in *Al Ghurair* and certain other circumvention determinations, Commerce's comparison and inquiry periods here were not "bifurcated by the initiation" of the investigation that led to the *Order*. Accordingly, the Court called Commerce's attention to the statutory language at §1677j(b)(3)(C) regarding import levels "after the initiation of the investigation," as well as *Al Ghurair II*'s comparison of "the periods before and after it initiated the investigations that led to the *original* AD/CVD orders." Remand Order at 27-28 n.21 (emphasis in original). The Court further noted that Commerce acknowledged that here, the *Order* dates to 1986 and instructed Commerce to "explain the basis for the time periods that it used" in that context. *Id.* Commerce did just that. It explained first that the statutory language

referring to the period "after the initiation of the investigation" should not be interpreted to mean directly after because circumvention can begin at any time following the issuance of an order. India Remand Redetermination at 11. It further explained that because companies subject to the circumvention inquiry are not required to maintain data going back to the 1980's, comparing data before and after the initiation of the investigation would be impracticable. *Id.* Commerce therefore complied with the Court's directive in full.

**C. SeAH VINA's Remaining Arguments Are Unpersuasive**

SeAH VINA attacks Commerce's remand redetermination on the basis of methodological choices that were not discussed in the Court's Remand Order. Besides being beyond the scope of what the Court asked Commerce to reconsider, these attacks fail on their own merits. First, SeAH VINA claims that the HRS export data – which showed that Indian exports of HRS to Vietnam increased by 580.3 percent – "does not support a circumvention finding when viewed in context." SeAH VINA Comments at 9. SeAH VINA's theory is that India's HRS exports to the world "grew at a similar trajectory" and increased by 113.9 percent during the period, meaning that the 580.3 percent increase in exports to Vietnam "must be understood against this backdrop of India's broad global export expansion" and did not constitute "evidence of targeted circumvention." *Id.*

However, a 580.3 percent increase in exports to Vietnam is not "similar" to a 113.9 percent increase in exports to the world – it is more than five times greater. Commerce specifically found that the increase in India's exports of HRS to Vietnam in relation to its exports to the rest of the world was probative of circumvention. *See* India Remand Redetermination at 16. Therefore, Commerce did not fail to consider India's HRS exports to Vietnam "against {the} backdrop" of its HRS exports to the rest of the world. It explicitly found that the increase in

exports to India relative to exports to the rest of the world was evidence that "indicate{s} that evasions of the *Order* likely have taken place and thus supports the continued affirmative determination of circumvention." India Remand Redetermination at 10. That finding was reasonable.

Second, SeAH VINA faults Commerce for not "rul{ing} out…alternative explanations" for the growth in Vietnam's exports to the United States, such as "Vietnam's general growth as a pipe and tube exporter over time{.}" SeAH VINA Comments at 10. However, "the statute does not require Commerce to evaluate…the reason for a change in trade patterns." *Deacero*, 2026 WL 1670099 at *18 (citing *Al Ghurair I* and *Al Ghurair II*). Further, the statute "does not mandate the consideration of any specific data in Commerce's evaluation of the pattern of trade." *Al Ghurair I*, 536 F. Supp. 3d at 1380. Indeed, the plaintiff in *Al Ghurair* made a similar argument, rejected by the court, that the pattern of trade merely reflected the "natural upward progression" of its business. *Al Ghurair I*, 536 F. Supp. 3d at 1379. Commerce is therefore under no obligation to eliminate every other possible explanation for a pattern of trade that is consistent with circumvention.

Finally, SeAH VINA recites evidence that tends to cut against circumvention and argues that Commerce should have given more weight to that evidence. It notes that its own exports of CWP made with India-origin HRS fell during the inquiry period, that U.S. imports of CWP from India did not decline during the inquiry period, and that intra-period exports of CWP from Vietnam to the United States declined. SeAH VINA Comments at 9-10. However, SeAH VINA simply asks the Court to reweigh the evidence and assign greater weight to U.S. imports of CWP from India, its own company-specific CWP export data, and intra-period trends rather than aggregate period trends. Commerce is free to weigh the evidence itself and assign more weight to

the massive increase in Indian HRS exports to Vietnam, the increase in Vietnamese CWP exports to the United States, the aggregate increase in Vietnamese CWP exports during the inquiry period, and SeAH VINA's own increased sourcing of HRS from India. *See* India Remand Redetermination at 16. Commerce found that all of these source of evidence "provide a strong indicator that India-origin HRS is likely to have been made into pipe and tube in Vietnam and then exported to the United States to evade the *Order*." *Id.* That determination is reasonable and should be upheld.

## III. CONCLUSION

For these reasons, Defendant-Intervenors respectfully request that the Court sustain the India Remand Redetermination issued by Commerce.

Respectfully submitted,

/s/_Jeffrey D. Gerrish___
Roger B. Schagrin, Esq.
Jeffrey D. Gerrish, Esq.
Nicholas C. Phillips, Esq.*
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001

*Counsel to Bull Moose Tube Company; Maruichi American Corporation; Wheatland Tube Company; The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

*Only admitted in New York. Practice limited to matters before federal courts and agencies.

/s/_Robert E. DeFrancesco, III___
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Theodore P. Brackemyre, Esq.
Kimberly A. Reynolds, Esq.
Paul A. Devamithran, Esq.
**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036

*Counsel to Nucor Tubular Products Inc.*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Comments in Support of Final Redetermination on Remand contains 3,354 words (including text, quotations, footnotes, headings, and attachments) and therefore complies with the word limitation set forth in this Court's Chamber's Procedures. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

Dated: August 10, 2026

/s/ Jeffrey D. Gerrish
Jeffrey D. Gerrish